Filed 10/28/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B337324 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA015316) |
| v. | |
| SAFOLOOOI SAM TAITO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Laura Laesecke, Judge. Affirmed.

Corey J. Robins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Appellant Safoloooi Sam Taito appeals the summary denial of his petition for resentencing under Penal Code section 1172.6.[1] The petition sought to vacate Taito's 1994 conviction for first degree murder with a felony-murder special circumstance for repeatedly punching and kicking Librado Godoy Lopez, stabbing him in his head with a screwdriver, and taking his personal property.

Although Taito's murder conviction was potentially based on a theory of felony murder, the record conclusively establishes that the jury made findings convicting him of first degree murder consistent with current section 189, subdivision (e)(2), rendering him ineligible for resentencing as a matter of law. We affirm the trial court's denial of Taito's petition.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### 1. Facts

Taito and codefendant Itiitilogoma "Kiki" Su'e lived in an apartment complex in Long Beach, California. On March 12, 1993, at about 11:30 p.m. to 12:00 a.m., a resident of the complex named Sina O'Brien heard loud music playing in the street. Taito, Su'e, and two others were in the street outside the complex. At 1:00 a.m., O'Brien looked out of her window after hearing glass break. She saw another resident named Librado Godoy Lopez lying in the street. Taito and Su'e were standing

---

[1] All further statutory references are to the Penal Code. Effective June 30, 2022, section 1170.95 was renumbered section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.)

[2] On February 5, 2025, we granted Taito's request for judicial notice of the record in case No. B091355.

over Godoy Lopez, kicking his abdomen and punching his head. They struck Godoy Lopez for 10 to 15 minutes. Taito said, "Get his wallet, get his money." Su'e looked through Godoy Lopez's pockets but did not take anything. Taito took Godoy Lopez's wallet and keys. O'Brien saw Taito stab Godoy Lopez in the head with an unknown item. After the stabbing, Su'e said, "That's enough. Let's get out of here." Su'e ran and Taito drove Godoy Lopez's car behind the complex to an alley. Taito returned on foot and kicked Godoy Lopez again and looked in his pockets. O'Brien called 911.

The apartment manager, Alameda Tepa,[3] also heard noise from the street. She recognized Taito's and Su'e's voices. Alameda looked out her window and saw Taito standing next to a car. Taito said, "get in the car, get in the car." Alameda did not see Su'e or anyone else. Taito entered the car and left. From her front door, Alameda saw Taito return, running back from the alley behind the complex. Taito lifted a man who was lying in the street. Taito reached into the man's pocket, took something from him, and kicked him multiple times.

Loud music and voices also woke Alameda's husband, Iuta Tepa. From their window, he saw Taito, Su'e, and a man in a white truck. Iuta saw Godoy Lopez enter his car on the other side of the street. He saw either Taito or Su'e pull Godoy Lopez out of his car and hit him. Godoy Lopez fell on the street and Taito and Su'e punched and kicked him. Taito hit Godoy Lopez in the head with an object. Taito and Su'e searched Godoy Lopez. They ran away. Su'e returned and tried to pull the object out of

---

[3] Because Alameda Tepa and her husband Iuta Tepa share a common last name, we will refer to them by their first names.

Godoy Lopez's head. When Taito returned, he entered Godoy Lopez's car and drove away.

When the police arrived, Godoy Lopez was lying on his stomach. He was stabbed in the right temple with a 10-inch screwdriver. The tip protruded out of his head behind the left ear. Godoy Lopez underwent surgery immediately after he was found by the police and taken to the hospital. On March 23, 1993, he was declared brain dead. The next day, he was taken off a respirator and pronounced dead. The autopsy revealed that the cause of death was multiple traumas caused by the penetrating stab wound and blunt force trauma to the head from the beating.

## 2.    Procedure

### A.    *The charges, trial, verdicts, and sentence*

The District Attorney prosecuted Taito and codefendant Su'e on an information filed on May 7, 1993, charging them with murder (§ 187, subd. (a); count 1) and second degree robbery (§ 211; count 2). The information also charged Taito with first degree burglary (§ 459; count 3), a felony-murder special circumstance (§ 190.2, subd. (a)(17)), and a personal use of a dangerous and deadly weapon enhancement (§ 12022, subd. (b)) as applied to counts 1 and 2.

The trial court instructed the jury on first degree murder theories of premeditation and deliberation (CALJIC No. 8.20) and felony murder with robbery designated as one of the qualifying offenses (CALJIC No. 8.21). The court also instructed on principals and direct aiding and abetting (CALJIC Nos. 3.00, 3.01, 3.14) and aiding and abetting felony murder (CALJIC No. 8.27.)

4

The trial court instructed the jury on the felony-murder special circumstance with CALJIC No. 8.81.17, which required finding that the murder was committed while a defendant was engaged in the commission or attempted commission of a robbery and to advance or carry out the robbery. The trial court also instructed the jury with CALJIC No. 8.80.1 on the non-killer's requisite mental state for the felony-murder special circumstance.[4]

---

[4]     The trial court orally read an edited version of CALJIC No. 8.80.1 as follows:

> If you were to [find] the defendant – a defendant in this case guilty of murder of the first degree, you must then determine if the following special circumstance is true or not true.
> Murder in the commission or attempted commission of a robbery.
> The People have the burden of proving the truth of the special allegation.
> If you have a reasonable doubt as to whether it's true, you must find it to be not true.
> Unless an intent to kill is an element of a special circumstance, if you are sat [*sic*] satisfied beyond a reasonable doubt the defendant actually killed a human being, you need not find the defendant intended to kill in order to find the special circumstance to be true.
> If you find a defendant was not the actual killer of a human being or if you are unable to decide whether the defendant was the actual killer or an aider and abettor, you cannot find the special circumstance to be true as to that defendant, unless you are satisfied  beyond a reasonable doubt the defendant, with the intent to kill aided and abetted

5

A jury convicted Taito of first degree murder (§ 187, subd. (a); count 1) and second degree robbery (§ 211; count 2). The jury found true the felony-murder special circumstance (§ 190.2, subd. (a)(17)) and the personal use of a deadly and dangerous weapon enhancement (§ 12022, subd. (b)).[5] The jury acquitted Taito of first degree residential burglary (§ 459; count 3). The jury also convicted codefendant Su'e of first degree murder and second degree robbery.

On December 15, 1994, the trial court sentenced Taito to state prison for life without the possibility of parole, plus the mid-term of three years for the second degree robbery charge in count 2 and one year for the personal use of a deadly weapon enhancement.

On March 31, 1997, the Court of Appeal affirmed Taito's judgment of conviction. (*People v. Safoloooi* (Mar. 31, 1997, B091355) [nonpub. opn.].)

---

or counseled or commanded or induced or solicited . . . or requested or assisted in any acts during the commission of the murder of the first degree.

And the murder we are talking about is in the commission of the crime of murder [*sic*]. It's called 190.2(a)(17), a crime which resulted in the death of a human being, Librado Lopez.

[5] The jury deadlocked as to whether to impose the death penalty and the trial court declared a mistrial. The District Attorney decided to no longer seek the death penalty.

### B.    *Section 1172.6 proceedings*

On August 24, 2021, Taito filed a petition for resentencing under the former section 1170.95, now section 1172.6.[6]  The court appointed counsel to represent him.

On January 11, 2022, the District Attorney filed his opposition to the petition and a supplemental opposition.  On June 23, 2023, Taito filed a reply.  On March 18, 2024, the trial court denied the petition at the prima facie stage without issuing an order to show cause.

## DISCUSSION

### *Changes to the Murder Law*

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) amended the substantive law on accomplice liability for murder by narrowing the felony-murder rule and eliminating the natural and probable consequences doctrine as a theory of liability for murder.  (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843, superseded by statute on another ground as stated in *People v. Wilson* (2023) 14 Cal.5th 839, 869.)  Pertinent for our review, Senate Bill 1437 added section 189, subdivision (e), providing felony murder liability only if the defendant was the actual killer, was not the actual killer but, with intent to kill, aided, abetted, or assisted the actual killer in the commission of first degree murder, or was a major participant in the underlying felony and acted with reckless indifference to human life.  (*People*

---

[6]    Taito submitted that the petition was not in the record and that, after a record omission letter, the petition could not be found.

7

*v. Curiel* (2023) 15 Cal.5th 433, 449 (*Curiel*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)

A defendant convicted under the prior felony murder law can petition to vacate the conviction and be resentenced on any remaining counts, if he could not now be convicted of murder because of the changes made by Senate Bill 1437. (§ 1172.6, subd. (a); *People v. Strong* (2022) 13 Cal.5th 698, 708–709 (*Strong*); *Lewis, supra*, 11 Cal.5th at pp. 959–960.) Upon receipt of a petition that contains all required information, the trial court must appoint counsel to represent the petitioner, if requested. (§ 1172.6, subd. (b)(3).) The court must also direct the prosecutor to file a response to the petition and permit the petitioner to reply. (*Ibid*.) If the court determines the petitioner has made a prima facie case for relief, it must issue an order to show cause and conduct an evidentiary hearing. (*Id*., subds. (c) & (d)(1).)

The prima facie inquiry is limited. (*Lewis, supra*, 11 Cal.5th at p. 971.) The court takes the petitioner's factual allegations as true and refrains from factfinding. (*Id*. at p. 972.) "The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Id*. at p. 971.)

Dismissal at the prima facie showing stage requires that the record of conviction conclusively establish the jury made findings on all elements necessary to convict under the current law. (*Strong, supra*, 13 Cal.5th at p. 708; *Curiel, supra*, 15 Cal.5th at p. 450.) If the defendant has made a prima facie showing, the court must issue an order to show cause and conduct an evidentiary hearing on his entitlement to relief. (§ 1172.6, subd. (c); *Strong*, at p. 708; *Curiel*, at p. 450.)

Whether the record of conviction shows the petitioner is ineligible for section 1172.6 relief as a matter of law is a legal question that we review de novo. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)

### 1. Actual killer

The Attorney General asserts that Taito is ineligible for resentencing because the record of conviction indicates he was the actual killer. The changes to sections 188 and 189 by Senate Bill 1437 apply to accomplices only. The Legislature eliminated liability for murder for persons "who were neither the actual killers nor intended to kill anyone." (*Strong, supra,* 13 Cal.5th at p. 707.)

To support his position, the Attorney General reminds us that the trial court may refer to the record of conviction to determine whether the petitioner has made the prima facie showing. (*Lewis, supra,* 11 Cal.5th at p. 970.) He points out that the prosecution proceeded under the theory that Taito was the actual killer based on evidence that he brutally stabbed Godoy Lopez in the head with a screwdriver. Taito's trial attorney also conceded that Taito was the actual killer but argued that he lacked the intent to commit the robbery underlying the theory of felony murder. Both attorneys expressed these comments about Taito as the actual killer during closing argument before the jury and during a jury instruction conference with the court.

We recognize that if "the record contains any indication [a defendant] had an accomplice who may have been the killer, a prima facie case ordinarily would be readily established, even by conclusory assertions in a form petition." (*People v. Mares* (2024) 99 Cal.App.5th 1158, 1173.) In a joint trial, the District Attorney prosecuted codefendant Su'e along with Taito for the murder of

9

Lopez.  Witnesses testified that Su'e punched and kicked Lopez.
The autopsy disclosed that Lopez died from blunt force trauma as
well as the stabbing to the head.  The trial court also instructed
the jury on direct aiding and abetting and felony murder as an
aider and abettor.[7]

We do not need to determine whether the record
conclusively demonstrates that Taito was the actual killer.  The
true finding on the felony-murder special circumstance renders
him ineligible for resentencing as a matter of law.

### 2. Aider and abettor under section 189, subdivision (e)(2)

Before the Legislature enacted Senate Bill 1437, the
required mental state for felony murder was simply the intent to
commit a qualifying inherently dangerous felony because malice
was imputed based on the participant's willingness to commit
that felony.  (*People v. Lopez* (2023) 88 Cal.App.5th 566, 574
(*Lopez I*).)  Senate Bill 1437 amended felony murder liability to
require one of three conditions.  Section 189, subdivision (e)
provides, "A participant in the perpetration or attempted
perpetration of a felony listed in subdivision (a) [including
robbery] in which a death occurs is liable for murder only if one of
the following is proven:  [¶]  (1) The person was the actual killer.
[¶]  (2) The person was not the actual killer, but, with the intent
to kill, aided, abetted, counseled, commanded, induced, solicited,

---

[7]     During the jury instruction conference, the prosecutor
specifically requested instructions on aiding and abetting,
suggesting that the jury may consider applying that theory to
evidence against Taito, even if it was not her theory of
prosecution.

10

requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Taito argues that the jury's finding on the felony-murder special circumstance does not establish that it found him guilty under a currently valid theory of murder.  As mentioned earlier, the trial court instructed the jury with CALJIC No. 8.80.1 for the felony-murder special circumstance.  Taito distinguishes CALJIC No. 8.80.1 from section 189, subdivision (e)(2), the current law for a defendant who is not the actual killer.  This instruction required the jury to find the defendant "with intent to kill aided and abetted an actor in the commission of murder in the first degree."  Taito asserts that CALJIC No. 8.80.1 required aiding, abetting, or assisting in the underlying felony.  He further argues that the language in section 189, subdivision (e)(2) requiring that a defendant who was not the actual killer must have aided, abetted, or assisted the "actual killer in the commission of first degree murder" means that he must have aided, abetted, or assisted the killing itself, not the qualifying felony of robbery during which the murder occurred.

To date, five published opinions have addressed the actus reus for a non-killer liable under the current felony-murder rule in section 189, subdivision (e)(2).  Three interpret the statute to require aiding, abetting, or assisting in the underlying felony. (*Lopez I, supra*, 88 Cal.App.5th at p. 578; *People v. Morris* (2024) 100 Cal.App.5th 1016, 1020, review granted July 17, 2024, S284751 (*Morris*); *People v. Lopez* (2024) 104 Cal.App.5th 616, 619 (*Lopez II*), review granted Nov. 13, 2024, S278162.)  The

11

other two interpret the statute to require aiding, abetting, or assisting in the killing.  (*People v. Kelly* (2024) 105 Cal.App.5th 162, 173, review granted Nov. 26, 2024, S287341 (*Kelly*); *People v. Jackson* (2025) 110 Cal.App.5th 128, 167, review granted June 11, 2025, S290457 (*Jackson*).)  The Supreme Court granted review in four of these cases and will have the final word on the actus reus required by section 189, subdivision (e)(2).  Until then, we follow those cases that interpret section 189, subdivision (e)(2) to mean the non-killer must aid, abet, or assist in the qualifying felony, not the killing.

Our interpretation of the phrase "commission of murder in the first degree" is consistent with the rest of the statute. Subdivision (a) of section 189 defines first degree murder to include "[a]ll murder that is . . . committed in the perpetration of, or attempt to perpetrate" a qualifying felony.  Section 189, subdivision (e) applies to "the perpetration . . . of a felony listed in subdivision (a) in which a death occurs."  The reference to "the commission of murder in the first degree" in subdivision (e)(2) incorporates the definition of murder from subdivision (a).  (*Lopez II*, *supra*, 104 Cal.App.5th at p. 621, review granted.)  The "phrase is a legal term of art which . . .  is not limited to the killing itself." (*Morris*, *supra*, 100 Cal.App.5th at p. 1025, review granted.)  It can also include the perpetration (or attempted perpetration) of the qualifying felony in which a principal kills another.  (*Lopez II*, at p. 622; *Morris*, at pp. 1025–1026.)  "With such an act occurring in furtherance of the underlying common design, all others who are engaged in the commission of the felony—i.e., acting in furtherance of the common design—would necessarily be aiding the killer in the commission of murder in the first degree." (*Morris*, at p. 1026.)  "Thus, under the terms of

the felony-murder statute, the two phrases are equivalents: assisting a qualifying felony in which a death occurs is the same as assisting the actual killer in committing first degree murder, and vice versa." (*Lopez I*, *supra*, 88 Cal.App.5th at p. 578.)

CALJIC No. 8.80.1—the instruction read at Taito's trial requiring "aiding and abetting any actor in the commission of murder in the first degree"—was based on the former section 190.2, subdivision (b).[8] At the time of Taito's offenses and his trial, it was the law for the felony-murder special circumstance. (§ 190.2, former subd. (b); Stats. 1989, ch. 1165, § 16, effective June 6, 1990.) Nearly identical language is used in section 190.2, subdivision (c), the current felony-murder special-circumstance provision.[9]

---

[8] Section 190.2, subdivision (b) stated, "Every person whether or not the actual killer found guilty of intentionally aiding, abetting . . . or assisting any actor in the commission of murder in the first degree shall suffer death or confinement . . . for a term of life without the possibility of parole, in any case in which one or more of the special circumstances enumerated in [specified paragraphs] of subdivision (a) of this section has been charged and specially found under section 190.4 to be true." (*People v. Dickey* (2005) 35 Cal.4th 884, 900 (*Dickey*), quoting § 190.2, former subd. (b), added by initiative measure Prop. 7, § 6, approved by the electorate Nov. 7, 1978; now § 190.2, subd. (c)); *Morris*, *supra*, 100 Cal.App.5th at p. 1026, review granted.)

[9] Section 190.2, subdivision (c) reads: "Every person, not the actual killer, who, with the intent to kill, aids, abets, . . . or assists any actor in the commission of murder in the first degree shall be punished by death or imprisonment in the state prison for life without the possibility of parole if one or more of the

The Supreme Court in *Dickey* interpreted the language in former section 190.2, subdivision (b).  (*Dickey*, *supra*, 35 Cal.4th at p. 900.)  The Court rejected the argument that the felony-murder special circumstance required aiding, abetting, or assisting the murder itself, despite its use of the "commission of murder in the first degree" language.  Instead, it concluded that only aiding, abetting, or assisting the qualifying felony was required.  The Court reasoned that a true finding of the felony-murder special circumstance would necessarily require the jury to find the defendant guilty of first degree murder.  Liability for aiding and abetting first degree felony murder extends to "[a]ll persons aiding and abetting the commission of [the underlying felony] . . . when one of them kills while acting in furtherance of the common design." (*Ibid.*; *Morris*, *supra*, 100 Cal.App.5th at p. 1026, review granted; *Lopez II*, *supra*, 104 Cal.App.5th at pp. 621–622, review granted; *Lopez I*, *supra*, 88 Cal.App.5th at p. 578.)

We agree with *Morris* and *Lopez I* that the Legislature's use of the same phrase interpreted in *Dickey* indicates its intent that the phrase in section 189, subdivision (e)(2) has the same meaning.[10] (*Morris*, *supra*, 100 Cal.App.5th at p. 1026, review

special circumstances enumerated in subdivision (a) has been found to be true under Section 190.4."

[10]	*Jackson* disagrees that the identical statutory language should be interpreted in the same way because the two statutes serve different purposes.  That court distinguishes between the intent of the older law to increase punishment for murder by expanding the list of special circumstances and the intent of Senate Bill 1437 to ameliorate the harshness of the murder

14

granted; *Lopez I, supra,* 88 Cal.App.5th at p. 578.)  The Legislature is deemed to enact or amend statutes considering existing statutes and cases.  (*Lopez I,* at p. 578.)

The use of the term "any actor" in the statute interpreted by *Dickey* (*Dickey, supra,* 35 Cal.4th at p. 900), rather than " 'actual killer,' " does not change our interpretation.[11]  (*Morris, supra,* 100 Cal.App.5th at p. 1027, review granted; *Lopez II, supra,* 104 Cal.App.5th at p. 622, review granted.)  "[T]he person who kills while acting in furtherance of the common design of the underlying felony is the actual killer." (*Morris,* at p. 1027.)  First degree murder liability attaches to this actor, "irrespective of his or her mental state regarding the killing."  (*Ibid.*)

---

statutes.  (*Jackson, supra,* 110 Cal.App.5th at pp. 171–172, review granted.)

But as *Jackson* acknowledges, we should interpret identical statutory language in the same way when the statutes cover " ' "the same or an analogous subject" matter.' [Citation.]" (*Jackson, supra,* 110 Cal.App.5th at p. 171, review granted.)  The former section 190.2, subdivision (b) and section 189, subdivision (e)(2) both cover felony murder, allowing for application of the statutory construction rule for identical language.

[11]     *Kelly* finds significance in the use of the term " 'actual killer' " to render *Dickey* inapposite and conclude section 189, subdivision (e)(2) requires aiding, abetting, or assisting the actual killer in the killing itself, rather than any other person in a felony. (*Kelly, supra,* 105 Cal.App.5th at p. 174, review granted.)

The different terms made no difference to the Supreme Court in *Dickey* because it focused on the phrase " '*commission of murder in the first degree*' " which is used in both statutes. (*Dickey, supra,* 35 Cal.4th at p. 900; *Lopez II, supra,* 104 Cal.App.5th at p. 622, review granted.)

The primary purpose of Senate Bill 1437 was to prohibit imputing malice to non-killer defendants to convict them under the felony-murder rule. (*Morris*, *supra*, 100 Cal.App.5th at p. 1027, review granted (citing Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Senate Bill 1437 (2017–2018 Reg. Sess.) as amended Aug. 20, 2018, p. 7); *Lopez I*, *supra*, 88 Cal.App.5th at p. 578.) To further this purpose, section 189, subdivision (e)(2) added a mens rea requirement of intent to kill. But it did not change the actus reus for non-killers who participate in the underlying felony with intent to kill. The actus reus required for those possessing an intent to kill remains simply " 'aiding . . . the underlying felony . . . that results in murder.' [Citation.]" (*Lopez I*, at p. 578; *Morris*, at p. 1027.)

*Lopez II* observed that the intent to kill was added in section 189, subdivision (e)(2), but "nothing else is mentioned." (*Lopez II*, *supra*, 104 Cal.App.5th at p. 623, review granted.) This construction supports the actus reus remaining unchanged. *Lopez II* observed that if the Legislature "intended to create a new actus reus in subdivision (e)(2)," it left "an awkward silence." (*Ibid*.) It further noted the contrast with subdivision (e)(3), which expressly included both the mens rea (i.e. reckless indifference to human life) and actus reus (i.e. major participant in the underlying felony). (*Ibid*.)

The Legislature's goal in enacting Senate Bill 1437 was to "more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § 1.) If section 189, subdivision (e)(2) required aiding, abetting, or assisting in the killing and not the underlying felony, a person with the intent to kill would need to engage in assisting the killing itself, as well as aiding and abetting in the qualifying felony. A person

16

with the less culpable mental state of reckless indifference to human life would only have to be a major participant in the underlying felony.  (§ 189, subd. (e)(3).)  Such an interpretation would require direct aiding and abetting the murder plus assisting in the qualifying felony when the death occurred.  But nothing indicates the Legislature intended to make felony-murder liability more difficult to prove than direct aiding and abetting murder when the defendant acted with intent to kill.  Adopting such an interpretation of subdivision (e)(2) would run counter to the express legislative intent of ensuring punishment according to the level of individual culpability.  (Stats. 2018, ch. 1015, § 1; *Lopez I*, *supra*, 88 Cal.App.5th at p. 579; *Morris*, *supra*, 100 Cal.App.5th at pp. 1027–1028, review granted.)

Eligibility for resentencing requires Taito to show that he "could not presently be convicted of murder . . . because of changes to Section 188 or 189" made by Senate Bill 1437. (§ 1172.6, subd. (a)(3).)  We conclude Taito is ineligible because the record conclusively establishes, at the very least, he was found guilty of first degree felony murder under a valid theory.

17

## DISPOSITION

We affirm the trial court's order denying Taito's petition for resentencing under section 1172.6.

## CERTIFIED FOR PUBLICATION

HANASONO, J.

We concur:

EGERTON, Acting P. J.

ADAMS, J.

18